Fuld, J.
These two eases call upon us to decide whether the mere filing of a notice of claim for unpaid taxes (estate and income) with the representatives of an estate constituted the commencement of a “ proceeding in court ’ ’ within the meaning of Internal Revenue Code provisions, thereby tolling the Statutes of Limitation set forth in those provisions.
In Matter of Feinberg, the decedent died intestate in 1947 and his widow was appointed administratrix of the estate. In that capacity, she filed her husband’s income tax return for 1947, reporting that he had been a partner in National Wire Rope Products and had earned income amounting to slightly under $36,000. The Internal Revenue Service audited the tax return, obtaining the administratrix’ consent to extend the time for making tax assessments until June 30, 1954. On May 13 of that year, the Government made a deficiency assessment of $32,440.09 based on the decedent’s unreported distributive interest in the partnership. Shortly thereafter, on August 12, the District Director of Internal Revenue filed a verified proof of claim with the administratrix who neither paid nor formally rejected it. In 1957, the Government petitioned the Surrogate’s Court to compel an accounting but, although a citation was issued, it was never served on the administratrix as her whereabouts were unknown. This proceeding was marked off the calendar in 1958 and a docket entry was made in 1960 terminating it as abandoned. The Government finally located the administratrix in Colorado and, in 1962, some eight years after the assessment was made, it filed a petition to compel an accounting and served her with a citation. In her answer, the administratrix moved to dismiss the proceeding, asserting that it was time barred by subdivision (c) of section 276 of the Internal Revenue Code of 1939 (now U. S. Code, tit. 26, § 6502, subd. [a], par. [1]) which provided that an income tax ‘ ‘ may be collected by distraint or by a proceeding in court, but only if begun (1) within six years after the assessment of the tax”.
In Matter of Field, the other case on appeal, the decedent died in 1946 and a year later the executors under his will reported an estate tax of nearly $23,000. In 1950, the Internal Revenue Service claimed that there was a tax deficiency of $33,000 which, several years later, after litigation in the Tax Court of the United States, was reduced on stipulation to slightly less than *504 $12,000. In 1954, an assessment was made for $14,707.31, representing tlie unpaid taxes plus interest and, a year later, tlie District Director filed a verified proof of claim with tlie executors who neither paid nor formally rejected it. Extensive discussions took place between the Government and the executors over payment of the claim but to no avail. In 1962, eight years after the assessment had been made, the Government sought to compel an accounting and also distrained the estate’s bank account. The executors responded by charging that the Government’s application was not timely, relying upon section 874 (subd. [b], par. [2]) of the Internal Revenue Code of 1939 (now U. S. Code, tit. 26, § 6502, subd. [a], par. [1]) which provided that an estate tax, just as an income tax, may be collected “ by distraint or by a proceeding in court ” if begun within six years after the assessment of the tax.
The Surrogate’s Court held in both cases that the Government was too late to press its tax claims. On appeal, the Appellate Division unanimously reversed and granted leave to appeal on certified questions.
It is not disputed that the Federal Government may proceed in our courts to obtain a recovery on its claims for unpaid taxes. (See Matter of Gellatly, 283 N. Y. 125, 127.) Nor is there any question that, in bringing such proceedings, ‘ ‘ the United States is not bound by state statutes of limitations or subject to the defense of laches ”. (United States v. Summerlin, 310 U. S. 414, 416; see Matter of Smathers, 249 App. Div. 523.) Congress has provided identically worded six-year Statutes of Limitation to govern collection of estate and income taxes following assessment (Internal Revenue Code of 1939, § 276, subd. [c]; § 874, subd. [b], par. [2]; now U. S. Code, tit. 26, § 6502, subd. [a], par. [1]), and they represent the exclusive requirements for timeliness which the Federal Government must meet.
Accordingly, as noted above, we are required to determine whether, under Federal law, the Government did in fact institute a ‘ ‘ proceeding in court * * * within six years after the assessment of the tax ’ ’ against each of the two estates before us. Although neither Congress nor the United States Supreme Court has defined what is meant by a “ proceeding in court ”, as that term is used in the Internal Revenue Code, there is no disagreement among the parties that a judicial settlement of *505 claims against an estate constitutes such a proceeding. The real issue is whether the proceeding was timely commenced by the Government. We note that the Supreme Court has already established the minimal steps in a State court which are necessary to commence a suit or proceeding fox purposes of a Federal Statute of Limitations. (See Herb v. Pitcairn, 325 U. S. 77; Burnett v. New York Cent. R. R. Co., 380 U. S. 424.) In the Herb case (325 U. S. 77, supra), a suit was brought under the Federal Employers’ Liability Act (FELA) within the limitations period — but in an Illinois court that lacked venue. Thereafter, when the litigation was transferred to the proper forum, it was dismissed for not having been ‘ ‘ commenced ’ ’ before the FELA Statute of Limitations had run. Under Illinois law, an action was not ‘ ‘ commenced ’ ’ until it was brought in a court of competent jurisdiction. The Supreme Court reversed, holding that (p. 79), “ When process has been adequate to bring in the parties and to start the case on a course of judicial handling which may lead to final judgment without issuance of new initial process, it is enough to commence the action within the federal statute
It thus appears that the critical factor is whether the service of the process employed in any particular case would, without more, operate to bring the parties into court. However, the types of legal proceedings and the procedures employed to institute such proceedings vary markedly from jurisdiction to jurisdiction. (See, e.g., Hanna v. Plumer, 380 U. S. 460.) Under such circumstances as these, it is highly unlikely that Congress intended to gauge by some uniform Federal standard — which might very well be impossible to formulate — the sufficiency of legal process in all State courts. In the past, when Congress has legislated in an area of differing State rules without making provision for such diversity, the courts have frequently construed this to mean that in each State the appropriate local rule is to be adopted as the applicable Federal law.[1] It was felt in those instances that “ the congressional purpose can best be accomplished by application of [the] settled state rules ' * * *, so long as it is plain * * * that the state rules do not effect *506 a discrimination against the Government ”. (R. F. C. v. Beaver County, 328 U. S. 204, 210.) This principle has been consistently-applied without exception in cases snch as the ones before ns.[2] As a Federal Court of Appeals observed in United States v. Saxe (261 F. 2d 316, 319), “ Whether notice of a claim against * * [an] estate * * * constitutes ‘ a proceeding in court, ’ presents a question of federal law. But the answer to the question depends upon the nature, function and effect of such a notice under [State] law.” Thus, when, under State law, a notice of claim would be regarded as the first step toward judicial settlement of the claim, a notice of claim for unpaid Federal taxes has been held to toll the Statutes of Limitation prescribed by the Internal Bevenue Code.[3] Similarly, when local rules provide that a notice of claim, without more, will not bring the matter into court, filing such a notice for unpaid Federal taxes has failed to save the claim from being time barred. (See United States v. Saxe, 261 F. 2d 316, supra.)
In New York, it is settled that the filing of a verified claim with the representatives of an estate is the first step toward having the claim “ tried and determined upon the judicial settlement ” (Surrogate’s Ct. Act, former § 211 [Code Civ. Pro., § 2681, as enacted by L. 1914, ch. 443; now Surrogate’s Ct. Act, § 211-a]), and it is viewed, therefore, as “ the commencement of a special proceeding that [tolls] the Statute of Limitations (Matter of Schorer, 272 N. Y. 247, 250; see Matter of Guy, 275 App. Div. 143; Matter of Whitcher, 230 App. Div. 239.) Former section 211 of the Surrogate’s Court Act provided that, “ If the executor or administrator doubts the justice or validity of any claim presented to him, he shall serve a notice in writing upon the claimant that he rejects said claim, or some part of it, which he specifies. Unless the claimant shall commence an action on his claim against the executor or administrator within three months after the rejection * * * said claimant * * * *507 [is] forever barred from maintaining sncb action, and in snob case said claim shall be tried and determined npon the judicial settlement.” This statute was construed in the Schorer case (272 N. Y. 247, supra) where a doctor filed a verified claim against an estate for medical services rendered the decedent but did not seek to compel an accounting until seven years later. We rejected the assertion that the claim was barred by a six-year Statute of Limitations and held that the effect of section 211 was to place the parties at the time of filing “ in the same position so far as the Statute of Limitations is concerned as though an action be commenced and issue joined ” (p. 251).
The argument that rejection of a claim is a prerequisite to jurisdiction in the Surrogate’s Court is totally without merit. The purpose of a Statute of Limitations is to penalize claimants for sleeping on their rights. There is no such procrastination when a claim is presented to the representatives of an estate within the prescribed limitations period. Moreover, if the Statute of Limitations continued to run until after the claim was rejected, it would mean that the estate could defeat the claim simply by ignoring it. That result would be both unreasonable and unfair. In point of fact, an examination of the record reveals that the claim was never formally rejected in the Schorer case (272 N. Y. 247, supra) where, as previously indicated, we first laid down the rule that the filing of a claim would toll the Statute of Limitations. It is, therefore, settled that timeliness depends on when a claim is filed rather than on Avhen it is rejected.
Section 211 of the Surrogate’s Court Act provided that, if the claim were rejected by the estate, the claimant could sue on it in some court other than the Surrogate’s Court but he was required to commence such a suit within three months of the rejection. He would thereafter be barred from bringing such a suit and his claim would be “ determined upon the judicial settlement ”. This language has been taken to mean that the Legislature “ desired to limit the bringing of actions on rejected claims and to cause such claims to be adjusted in Surrogate’s Court.” (Matter of Schorer, 272 N. Y. 247, 251, supra.) However, in Matter of Smathers (249 App. Div. 523, supra), the Appellate Division properly held that the short Statute of Limitations on litigating rejected claims outside the Surrogate’s *508 Court did not apply to tax claims asserted by the Federal Government, since, as I pointed ont earlier, “ the United States is not bound by state statutes of limitations (United States v. Summerlin, 310 U. S. 414, 416, supra.) Nothing decided in the Smathers case is inconsistent with the present decision. We are concerned here with a matter of Federal law and it may not be disputed that Congress has the power to key the tolling of a Federal Statute of Limitations to State law without subjecting a Federal agency to local restrictions.
It is our conclusion, therefore, that the Government commenced a special proceeding by filing the tax claims against each of these estates and the Statutes of Limitation in the Internal Revenue Code were thereby tolled. It is irrelevant, insofar as the question of timeliness is concerned, that in Feinberg the Government abandoned its earlier attempt to compel an accounting or that in Field it has already distrained the estate’s checking account. Each of these, as well as each of the present efforts to compel an accounting, is nothing .more than “ a proceeding in the special proceeding ’ ’. (Matter of Schorer, 272 N. Y. 247, 250, supra; see Matter of Whitcher, 230 App. Div. 239, supra.)
Nor is it significant that the claims were filed with the estates by the District Director of Internal Revenue. Although section 3740 of the Internal Revenue Code of 1939 provided that “ No suit for the recovery of taxes * * * shall be commenced unless * * * the Attorney General directs that the suit be commenced”, we do not believe the statute was designed to apply to the situation where, under State law, litigation is commenced by a communication between the parties which is not filed in court. (See Taylor v. United States, 324 Mass. 639, cert. den. 338 U. S. 948, supra.)
The order of the Appellate Division in each case should be affirmed, with costs, and the certified questions answered in the affirmative.
Chief Judge Desmond and Judges Van Vooehis, BuRke, Scileppi, Beegan and Keating concur.
In each case: Order affirmed, etc.

. See, e.g., Auto Workers v. Hoosier Corp., 383 U. S. 696; United States v. Yazell, 382 U. S. 341; Burnett v. New York Cent. R. R. Co., 380 U. S. 424, 435, supra; Commissioner v. Stern, 357 U. S. 39; R. F. C. v. Beaver County, 328 U. S. 204.

. See United States v. Saxe, 261 F. 2d 316; United States v. Ettelson, 159 F. 2d 193, 196; United States v. American Cas. Co., 238 F. Supp. 36; United States v. First Nat. Bank, 54 F. Supp. 351; Taylor v. United States, 324 Mass. 639, cert. den. 338 U. S. 948; cf. Matter of McClure Co., 21 F. 2d 538.

. See United States v. Ettelson, 159 F. 2d 193, 196, supra; United States v. American Cas. Co., 238 F. Supp. 36, supra; United States v. First Nat. Bank, 54 F. Supp. 351, supra; Taylor v. United States, 324 Mass. 639, cert. den. 338 U. S. 948, supra.