**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Dorothy SILVERMAN, Administratrix, Estate of Fred R. Silverman, Deceased, Defendant-Appellee.**

**No. 78–2169.**

United States Court of Appeals, Ninth Circuit.

June 16, 1980.

Rehearing Denied Aug. 21, 1980.

---

Libero Marinelli, Jr., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

A. V. Falcone, Los Angeles, Cal., for defendant-appellee.

Before CHAMBERS, SNEED and ALARCON, Circuit Judges.

SNEED, Circuit Judge:

This case involves a somewhat obscure, but nonetheless important, area lying at a junction of the federal law fixing the manner in which the United States collects estate taxes and the state law governing the probate of decedents' estates. While our resolution of the issues presented by this case does not elate us, we derive some satisfaction from our belief that it is required by Congress.

The United States seeks to reduce its estate tax assessment to judgment. It failed in the district court, which granted summary judgment against it and in favor of the appellee, administratrix of the estate of Fred R. Silverman. The district court concluded that collection by the United States of its properly assessed tax was barred by the lapse of more than six years between the assessment and this suit. In reaching this result the district court applied section 6502(a) of the Internal Revenue Code,[1] and found that under the facts, the United States had not within six years after the assessment either levied on the property of the Estate or "commenced a proceeding in court." It also concluded that the running of the six year limitation period was not suspended while the assets of the decedent were subject to probate. As a consequence, in its view the United States obtained no benefit from section 6503(b) of the Code. I.R.C. § 6503(b).[2]

While we agree that the United States had not within the six year period "commenced a proceeding in court," we disagree with the view that section 6503(b) provides no benefit. As we see it, section 6503(b) suspends the running of the six year period so long as all or substantially all of the assets of the decedent are subject to the control or custody of the probate court.

Therefore, we reverse the judgment of the district court and remand this case to it to determine whether under the principles this opinion enunciates the United States is entitled to prevail in its effort to reduce its assessments to judgment.

Our jurisdiction rests on 28 U.S.C. § 1291 (1976).

## I

## FACTS

The relevant facts, as revealed by the record, are quite simple. Fred R. Silverman died on August 18, 1963, and his will was admitted to probate in the Superior Court of the State of California for the County of Los Angeles on September 27, 1963. On November 4, 1964, the executor filed a federal estate tax return, and on November 27, 1964, an estate tax assessment was made. On October 20, 1965 and October 18, 1966, the government filed proofs of claim in the Superior Court for unpaid taxes in the amount of $50,026.30, plus unassessed interest and other statutory

1. *Section 6502(a) provides:*
 *Collection after assessment*
 (a) *Length of period.*—Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—
 (1) within 6 years after the assessment of the tax, or
 (2) prior to the expiration of any period for collection agreed upon in writing by the Secretary or his delegate and the taxpayer before the expiration of such 6-year period (or, if there is a release of levy under section 6343 after such 6-year period, then before such release). The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. The period provided by levy shall not be extended or curtailed by reason of a judgment against the taxpayer. I.R.C. § 6502(a).

2. Section 6503(b) provides:
 *Suspension of running of period of limitation*
 (b) *Assets of taxpayer in control or custody of court.*—The period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States or of any State or of the District of Columbia, and for 6 months thereafter. I.R.C. § 6503(b).

additions.[3] This claim was not approved by either the administratrix or probate judge and has not been paid. The United States commenced the present action to reduce its claim to judgment on December 6, 1976. The administratrix, on instructions by the probate court, resisted on the basis of section 6502(a). Probate proceedings have not been concluded.

## II

### EFFECT OF FILING CLAIM

The United States insists that by filing its claim in 1965 and 1966 it began "a proceeding in court" well within six years after its assessment. If this is correct, section 6502(a) provides no bar to its collection of the tax.

 This is an issue that has been before a number of courts, state as well as federal, with conflicting results.[4] We agree with the court in *United States v. Saxe*, 261 F.2d 316, 319 (1st Cir. 1958), when it pointed out that, while what constitutes "a proceeding in court" presents a question of federal law, the proper answer turns on the "nature, function and effect" of filing a claim under the relevant local law which in the case before us is that of California. We believe California law quite clearly indicates that it would be improper to characterize for purposes of federal tax law the filing of a claim against an estate subject to probate as the commencement of a "proceeding in court."

We reach this conclusion on the basis of the manner in which the Probate Code of California treats the filing of a claim against the probate estate for purposes of applying its own statutes of limitation. Generally speaking, under California law the statute of limitation applicable to the type of claim being made is not tolled by filing a claim. Thus, section 714, Cal.Pro-

bate Code (West 1956), provides, *inter alia*, that upon rejection of a claim by the executor or administrator "the holder must bring suit in the proper court against the executor or administrator, within three months after the date of service of such notice if the claim is then due, or, if not, within two months after it becomes due; otherwise the claim shall be forever barred." This section, a so-called "nonclaim" statute, limits the otherwise generally applicable statute of limitation but does not extend it. *See Barclay v. Blackinton*, 127 Cal. 189, 193, 59 P. 834 (1899); *Berger v. O'Hearn*, 41 Cal.2d 729, 733, 264 P.2d 10 (1953); *Zapata v. Meyers*, 41 Cal.App.3d 268, 271, 115 Cal. Rptr. 854 (1974). The short period of this "nonclaim" statute operates independently of the statute generally applicable to the type claim involved. Moreover, it is filing the suit on the claim in the proper court, not the filing of the claim in probate proceedings, that marks the terminal date of the period, the duration of which will determine whether the claim is barred either by the "nonclaims" statute or the statute otherwise generally applicable.

Whatever doubt there may be about the inability of filing a claim in probate proceedings to suspend the running of California's generally applicable statutes of limitation was put to rest by the decision of the Supreme Court of California in *Berger v. O'Hearn*, 41 Cal.2d 729, 264 P.2d 10 (1952). In that case, as in the case before us, a claim against the estate was filed within the period provided by the generally applicable statute but no action was taken by the administratrix or the probate court with respect to the claim. Subsequent to the expiration of the period of time provided by the generally applicable statute of limitation the claimant brought suit on the claim against the estate. The suit was barred, the California Supreme Court held,

---

3. The estate tax assessment was made in the amount of $89,547.11. Partial payments by the estate have since reduced that liability to $50,-026.30, plus unassessed interest and other statutory additions.

4. *See, e. g., In re Estate of Feinberg*, 18 N.Y.2d 499, 277 N.Y.S.2d 249, 254, 223 N.E.2d 780, 783 (1966); *United States v. American Casualty Co.*, 238 F.Supp. 36 (W.D.Ky.1964); *United States v. Ettelson*, 159 F.2d 193 (7th Cir. 1947); *United States v. First National Bank*, 54 F.Supp. 351 (N.D.Ohio 1943).

notwithstanding the fact that the claim was filed within the applicable period and that the claim was not rejected until approximately two months before the suit was brought.[5] Filing the claim, even when joined with a failure to act on the claim until shortly before suit was filed, did not suspend the running of the generally applicable statute.

Given this structure of the California probate law we see no reason why filing a claim in a California probate proceeding should be characterized as "a proceeding in court" for purposes of section 6502(a). To so characterize the filing of a claim would impart to it a significance not accorded it by local probate law. Our conclusion, therefore, is the same as that reached in *United States v. Saxe, supra,* after its analysis of Massachusetts probate law.

### III

### SUSPENSION OF THE LIMITATION PERIOD

The second issue we confront is more difficult. The district court, in holding that the United States could derive no benefit from section 6503(b) of the Internal Revenue Code, said:

"To allow § 6502(a) to be suspended during the pendency of a state probate proceeding could allow the United States an unreasonably long time in which to collect its taxes—in this case, for example, perhaps over 20 years. Moreover, the collection efforts of the United States are not hindered by a pending probate proceeding in California since a federal estate tax claim has priority in such a proceeding, see Cal.Prob.Code § 950(1); *Wit-*

kin *Summary of California law,* Wills and Probate § 444 at 5886, and since the United States may always proceed by levy pursuant to 26 U.S.C. § 6331 et seq., a proceeding by levy would supercede any state probate proceeding. *See Hoye v. United States,* 277 F.2d 116, 119 (9th Cir. 1960).

Were we to agree entirely with the thrust of these observations, we also would hold the claim of the United States barred by the limitation provisions of section 6502(a). We do not so agree, however.

■ To begin with, we must accord significance to the amendment of section 6503(b) of the Internal Revenue Code by the Federal Tax Lien Act of 1966 which deleted the preexisting exceptions to the suspension of the running of limitations applicable to an estate of a decedent or an incompetent. *See* H.R.Rep.No. 1884, 89th Cong., 2d Sess. 22–23 (1966), U.S.Code Cong. & Admin.News 1966, p. 3722; S.Rep.No. 1708, 89th Cong., 2d Sess. 24, U.S.Code Cong. & Admin.News 1966, p. 3722 (1966). Presumably the general purpose of section 6503(b) is to eliminate any necessity on the part of the Treasury to attempt to seize property in the "control or custody" of a court in order to protect its tax claims. *See* H.R.Rep.No. 1337, 83d Cong., 2d Sess. 107, A415 (1954), U.S.Code Cong. & Admin.News 1954, p. 4025; S.Rep.No. 1622, 83d Cong., 2d Sess. 585, U.S.Code Cong. & Admin.News 1954, p. 4025 (1954). By providing originally for an exception applicable to the estate of a decedent or incompetent Congress perhaps then believed that the "custody and control" of courts in those instances was sufficiently different to make unnecessary the suspen-

---

**5.** Though the generally applicable statute of limitation has a long time to run on *actions,* probate statutes generally require that *claims* be filed within a short time known as the nonclaim period. The representative is thus given an opportunity to quickly determine the obligations against the estate and the method of satisfying those obligations. *See generally Satterfield v. Garmire,* 65 Cal.2d 638, 641, 56 Cal. Rptr. 102, 422 P.2d 990 (1967); *Rupp v. Kahn,* 246 Cal.App.2d 188, 193, 55 Cal.Rptr. 108 (1966). In California, the period within which

claims must be filed is four months after the first publication notice to creditors. Cal.Prob. Code § 700. A claim timely filed may be acted upon after the period expires. Cal.Prob.Code § 712. With respect to a claim presented to the representative but not acted on formally, the claimant at his option may, after 10 days, treat the inaction as a rejection and commence an action on the claim. *Id.* The absence of an election to treat inaction as a rejection prevents the operation of section 714.

sion. No explanation for the exception was given, however. In any event, it was removed in 1966. In doing so the Committee Reports of both the House and Senate recognized that "administrative collection procedures" were not available in the case of an estate of a decedent or incompetent and that the running of the period of limitations should be suspended in those instances as in all other cases in which the assets of the taxpayer are in the "control and custody of the court."

This recognition by Congress of the unavailability of administrative collection procedures in the case of an estate of a decedent is consistent with the longstanding position of the Treasury that it may not levy on assets of a decedent's estate while in the custody of the probate court. *See* G.C.M. 9991, X1–1 C.B. 135, 137 (1932). It is also consistent with the decision of the Supreme Court of the United States in *Markham v. Allen*, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256 (1946). In holding that the Alien Property Custodian could bring suit in federal district court to obtain his share of a decedent's estate then in the course of probate administration, the Supreme Court carefully pointed out that the judgment of the district court left "undisturbed the orderly administration of decedent's estate in the state probate court." *Id.* at 495, 66 S.Ct. at 495. The Court concluded that to entertain the Custodian's suit did not mean that the district court was exercising probate jurisdiction nor would it amount to "an interference with property in the possession or custody of a state court." *Id.* Any judgment obtained by the Custodian, of course, would have to be ac-

corded full faith and credit by the probate court.

It follows that each of the three branches of the federal government has evidenced concern about the need to avoid undue interference with the probate of decedents' estates by state courts. The elimination of the exception applicable to estates of decedents and incompetents by the 1966 Act further reduces the necessity of interference. We cannot ignore this action by Congress.

It follows that in this case the district court erred in stating that a levy by the United States pursuant to section 6331 "would supercede state probate proceedings." Nor does *Hoye v. United States, supra,* so hold. It merely held that the Controller of the City of Los Angeles was a "person" within the meaning of section 6332 of the Code of whom the Secretary could demand the surrender of property subject to levy. We know of no decision that has held a state probate court to be such a "person" nor are we prepared to so hold.

■■■ Therefore, while we recognize that the United States could have initiated this suit to obtain a judgment against the administratrix of Silverman's estate immediately after the assessment of estate taxes, we nonetheless hold that this ability does not render the suspension of the running of limitations provided by section 6503(b) inapplicable. The Internal Revenue Code provisions dealing with the limitations provisions applicable to collection of taxes do not distinguish in a relevant manner between bringing suit and levying on property.[6]

---

6. Section 6502(a) provides that a tax "may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun (1) within 6 years after the assessment of the tax." The commencement of a proceeding in court or a levy within the period satisfies the statute. Either method may be employed. Section 6503(a)(1) suspends the limitation period "for the period during which the Secretary or his delegate is prohibited . . . from collecting by levy or a proceeding in court." I.R.C. § 6503(a)(1). The suspension occurs when *either* levy or proceeding in court is pro-

hibited. Had section 6503(a)(1) been stated conjunctively, rather than alternatively, a strong argument could be made that a prohibition against a levy would not suspend limitations so long as a proceeding in court could be brought. However, no such argument properly lies under the present language of section 6503(a)(1). This being the case, the phrase "the period of limitations on *collection after assessment*" (italics added), employed in section 6503(b), should be interpreted to embrace collection by either levy or court proceeding. Should either be barred by the fact that the

Both must be available before it can be said that collection procedures are unhindered.

The suspension should not exist when the bar to levy is insubstantial, however. This is recognized by applicable regulations which provide that the section 6503(b) suspension is applicable only when "*all or substantially all of the assets of a taxpayer* are in the control or custody of the court." Treas.Reg. § 301.6503(b)–1, T.D. 7121, 1972–2 C.B. 411, 412 (italics added). The presence of assets of the decedent, substantial in value in relation to the total value of the decedent's estate, not subject to the custody and control of the probate court precludes suspension of the running of the section 6502(a) period. The presence of substantial assets may be attributable to their passage from the decedent by means other than his last will or partial distributions by executor or administrator.

Our holding is not inconsistent with what we believe is the spirit of *McAuley v. United States*, 525 F.2d 1108 (9th Cir. 1975). In *McAuley* we refused to read section 6503(b) to require a suspension of the running of the statute of limitations during the entire period of the bankruptcy proceeding because of the inevitable presence of property exempt from bankruptcy long before the termination of bankruptcy proceedings. Under these circumstances it could not be said that the Treasury's efforts to collect the taxes was hindered from the beginning to end of bankruptcy proceedings. By recognizing that the suspension is either initially precluded or lifted, as the case may be, by the presence of substantial assets not subject to probate, we also utilize the existence of hindrance or no in interpreting section 6503(b). This we believe reflects the spirit of *McAuley*.

We acknowledge that *McAuley* rejected, as we do not, the principle of having section 6503(b) suspension turn on whether all or substantially all the taxpayer's assets were subject to control and custody of a court. Special circumstances unique to bankruptcy proceedings justified this rejection in *McAuley*. We held that suspension "until assets are in control or custody of the court the suspension should operate. In this manner

six months after the date of the first creditors meeting, and for an additional six months thereafter as provided by section 6503(b)" accomplished the purpose of the section and avoided the necessity of making suspension turn on a difficult question of fact. *Id.* at 1114.

We cannot avoid this necessity in the case of a decedent's estate. There exists no property owned by the decedent at the date of his death exempt from death duties. Whether the property passed by will or otherwise only pertains to the extent to which his estate is subject to the control and custody of the probate court. Also a bankrupt survives bankruptcy; a decedent never endures the probate of his own estate. The bankrupt, as *McAuley* pointed out, thus can acquire assets subsequent to bankruptcy from which the Treasury may be able to recover its taxes. A decedent, of course, cannot acquire post-death assets.

In *McAuley* we were concerned with the ability of the section 6503(b) suspension to extend the period of limitations applicable to collection of taxes for an unreasonable length of time. We are also concerned in this case. However, the features that distinguish the probate estate from that of bankruptcy and the clear mandate of Congress require our holding. What is needed is a means fair to the United States by which the executor or administrator unilaterally could lift the suspension prior to distribution of a substantial portion of the assets. It is the task of Congress, rather than the courts, to devise the technique, however.

Reversed and Remanded.

sections 6503(a)(1) and (b) are made consistent.