1 F.3d 1242
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dean E. BUTCHER (92-3987), and Edward M. Brady (92-4011),
Defendants-Appellants.
 Nos. 92-3987, 92-4011.
 United States Court of Appeals, Sixth Circuit.
 July 19, 1993.
 
 Before: MILBURN and NORRIS, Circuit Judges; and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Dean E. Butcher (No. 92-3987) appeals the district court's order denying his motion to suppress evidence. Defendant Butcher entered a Federal Rule of Criminal Procedure 11(a)(2) conditional plea of guilty to possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. Sec. 5861(d), specifically reserving his right to appeal the district court's denial of his motion to suppress. Judgement was entered against defendant Butcher on September 18, 1992.
 
 
 2
 Defendant Edward M. Brady (No. 92-4011) also appeals the district court's denial of his motion to suppress evidence. Defendant Brady also entered a Fed.R.Crim.P. 11(a)(2) conditional plea of guilty to possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. Sec. 5861(d) and to being a felon in possession of a firearm in violation of 18 U.S.C. Sec. 922(g)(1), specifically reserving the right to appeal the district court's denial of his motion to suppress. Judgment was also entered against defendant Brady on September 18, 1992.
 
 
 3
 On appeal, the issues are (1) whether the district court erred in denying defendants' motions to suppress evidence seized on the ground that the police possessed a reasonable suspicion of criminal activity to justify the stop and a reasonable suspicion that defendants presented a danger to justify a protective search of the passenger compartment of the vehicle in which both defendants were riding, and (2) whether the district court erred in denying defendant Brady's motion to suppress statements made after the stop on the ground that defendant Brady did not voluntarily waive his Miranda rights. For the reasons that follow, we affirm as to both defendants.
 
 I.
 
 4
 On October 16, 1991, at approximately 10:30 p.m., Officer Douglas Scharsu of the Austintown Police Department in Ohio noticed a brown Chevette which fit the general description of a vehicle believed to be used in a number of thefts from area apartment coin operated washing machines. As the Chevette pulled up to a traffic light, Officer Scharsu approached the vehicle in his patrol car and contacted his dispatcher, providing a description of the Chevette and its license plate number. Officer Scharsu noted that the front windshield of the Chevette was badly cracked. He testified at the suppression hearing that the crack ran from the passenger's side of the window across to the driver's side of the Chevette.
 
 
 5
 When the Chevette left the intersection, Scharsu followed awaiting information from his dispatcher. The dispatcher informed him that the vehicle was owned by Dean E. Butcher. Immediately following the dispatch of this information, Corporal Pritchard, who was listening on the police radio, informed Scharsu that he believed Butcher did not have driving privileges. Officer Scharsu then turned on his lights and pulled the Chevette over. As the Chevette came to a stop, Scharsu was advised by the dispatcher that Butcher, in fact, lacked driving privileges.
 
 
 6
 Scharsu further testified that when his patrol car lights were activated, he noticed that the occupants of the Chevette moved around excessively and appeared to place something under the front seat of the Chevette. When the Chevette had stopped, Scharsu exited his vehicle, approached the driver's side of the Chevette, and asked the driver for identification. The driver informed Scharsu that his name was Dean Butcher and provided the officer with his social security number.
 
 
 7
 While Scharsu was obtaining identification from Butcher, the driver, Officer Baker arrived at the scene. Scharsu informed Baker that the driver appeared nervous and may have placed something under the front seat of the car. Scharsu returned to his car to confirm the driver's identification.
 
 
 8
 Based on prior dealings with Butcher, Baker recognized Butcher and proceeded to the driver's side of the vehicle where Butcher was sitting. Officer Baker asked Butcher what he was hiding. Butcher then reached under the passenger's side of the front seat and produced an open container of beer. Baker then asked if there was anything else under the seat. Baker testified at the suppression hearing that at this point, Butcher's demeanor immediately changed; he quit smiling, became very nervous, and answered no.
 
 
 9
 Baker further testified at the suppression hearing that in order to determine if there was any additional beer under the front seat and to insure his as well as Officer Scharsu's safety, he asked defendant Brady to step out to the rear of the vehicle and told defendant Butcher to place his hands on the steering wheel. Officer Baker then leaned into the front passenger's compartment and made a visual sweep of the floor with the aid of a flashlight. He saw the tip of a weapon under the seat, immediately backed away from the vehicle, and drew his weapon.
 
 
 10
 Officer Baker ordered Butcher to get out of the vehicle and move to the rear of the Chevette. Baker then removed a sawed-off shotgun from underneath the front passenger's seat. At the suppression hearing, Baker testified that he had been unable to see the shotgun from outside the Chevette but instead had to lean into the Chevette and look down in order to see it. As Baker was removing the weapon, defendant Butcher blurted out that the gun and beer were, in fact, what he was hiding. Once both defendants were standing at the rear of the Chevette, Officer Scharsu patted them down. Scharsu then put Brady in his patrol car, and Baker put Butcher in his patrol car.
 
 
 11
 While Scharsu and Brady were sitting in Scharsu's patrol car, Scharsu read Brady his Miranda rights, and Brady signed a form waiving those rights. Brady then told Scharsu that the shotgun belonged to a friend, and he had told the friend it was illegal and that he, Brady, was going to dispose of it for him. He then gave a written statement regarding the shotgun. Approximately fifteen minutes elapsed from the time Brady sat in the patrol car until he gave his written statement.
 
 
 12
 While Officer Baker and defendant Butcher were in Baker's patrol car, Baker read Butcher his Miranda rights and then asked Butcher what he was doing with a sawed-off shotgun. Butcher responded that he was "target-shooting." J.A. at 98. Both defendants were then transported to the Austintown police station.
 
 
 13
 At the police station, Butcher was cited for driving under a suspended license and for driving with a cracked windshield in violation of Ohio Revised Code Sec. 4513.23. Both of these citations were later dismissed. Also at the police station, Butcher was again read his Miranda rights whereupon he read and signed a waiver form. He then indicated to Officer Pritchard that the shotgun was his; he used it for target practice; and he was not impressed with the scatter pattern of the gun. Brady was also read his Miranda rights a second time at the police station. Both officers testified at the hearing that defendants Brady and Butcher appeared to understand the nature of the Miranda warnings, both at the scene of the stop as well as at the police station.
 
 A.
 
 14
 Based on the conflicting statements regarding ownership and possession of the shotgun, both individuals were indicted for violations of 26 U.S.C. Sec. 5861, possession of an unregistered sawed-off shotgun, and defendant Brady was also indicted under 18 U.S.C. Sec. 922(g)(1), being a felon in possession of a firearm. On April 28, 1992, the district court conducted a suppression hearing. Following the hearing, the district court overruled the defendants' motions to suppress both the evidence of the shotgun and their statements regarding the shotgun. On June 9, 1992, both defendants entered conditional pleas of guilty to the indictment pursuant to Fed.R.Crim.P. 11(a)(2) and reserved the right to appeal the district court's denial of their motions to suppress. On September 14, 1992, defendant Butcher was sentenced to 21 months incarceration followed by two years supervised release. On September 15, 1992, defendant Brady was sentenced to 41 months incarceration followed by two years supervised release. Judgment was entered against both defendants on September 18, 1992. This timely appeal followed.
 
 II.
 A.
 
 15
 Defendants Brady and Butcher argue that the district court erred in denying their motions to suppress evidence obtained when the police stopped the vehicle in which they were riding and subsequently searched under the passenger's seat and found the sawed-off shotgun. Defendants argue that the stop and resulting search constituted an unreasonable search and seizure under the Fourth Amendment of the United States Constitution as made applicable to the states through the Fourteenth Amendment.
 
 
 16
 A district court's factual findings made in consideration of a motion to suppress evidence are to be upheld unless they are clearly erroneous. See United States v. Silverman, 621 F.2d 961, 963 (6th Cir.1980), cert. denied, 450 U.S. 913 (1981). However, the district court's conclusions of law are subject to de novo review on appeal. See Whitney v. Brown, 882 F.2d 1068, 1071 (6th Cir.1989). The reviewing court is to review the evidence "in the light most likely to support the district court's decision." United States v. Gomez, 846 F.2d 557, 560 (9th Cir.1988).
 
 B.
 
 17
 The district court denied defendants' motions to suppress the evidence on the basis that Officer Scharsu was justified in stopping the Chevette because the Chevette fit the description of a vehicle involved in other crimes, the owner of the Chevette had no driving privileges, and the Chevette's windshield was cracked. The district court further found that the search of the passenger compartment of the vehicle was justified by Officer Baker based upon his and Officer Scharsu's testimony and Baker's concern for his and his partner's safety. In this connection, the district court found that Officer Scharsu had told Officer Baker that he had seen the defendants moving around in the vehicle implying that something may have been hidden under the seat. The district court also expressly stated that he believed the officers' testimony, that the officers were sincere, and that they were not lying.
 
 
 18
 It is well settled that police officers may stop a person for investigative purposes where, considering the totality of the circumstances, the officers have a reasonable and objective basis for suspecting that that particular person is engaged in criminal activity. Terry v. Ohio, 392 U.S. 1, 21-22 (1968). This reasonable and objective basis must be supported by "specific and articulable facts which, taken together with reasonable inferences from those facts, reasonably warrant that intrusion." Id. at 21. Finally, "in determining whether the official acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Id. at 27.
 
 
 19
 Both defendants seek to focus solely on the cracked windshield in challenging the validity of Officer Scharsu's stop of the Chevette. At the suppression hearing, Officer Scharsu testified that the only reason he gave in his report regarding the incident on October 16, 1991, as a justification for stopping the Chevette was that the Chevette possessed a cracked windshield, a "view obstruction" he believed violated Ohio Revised Code Sec. 4513.23. Section 4513.23 provides in relevant part:
 
 
 20
 [o]perators of vehicles ... shall have a clear and unobstructed view to the front and to both sides of their vehicles ... and shall have a clear view to the rear of their vehicles....
 
 
 21
 Both defendants argue vigorously that this section does not prohibit cracked windshields, and, therefore, Officer Scharsu had no reasonable suspicion that defendants Butcher and Brady had committed or were committing an offense in violation of state law which could justify the stop. In support of this argument, defendant Butcher relies on three circuit court cases. In United States v. Powell, 929 F.2d 1190, 1194 (7th Cir.), cert. denied, 112 S.Ct. 584 (1991), the Seventh Circuit held that the stop of a vehicle was invalid where the stop was based on the driver's failure to give a signal indicating he was merging onto the highway where state law did not require such a signal. In United States v. Trigg, 878 F.2d 1037, 1039 (7th Cir.1989), the Seventh Circuit held that the reasonableness of an arrest depends on two objective factors: (1) whether the arresting officer had probable cause to believe that the defendant had committed or was committing an offense, and (2) whether the arresting officer was authorized by state or municipal law to effect a custodial arrest for the particular offense. Defendant Butcher analogizes that if an arrest must be authorized by state or municipal law, so must an investigative stop in order to be reasonable under the Fourth Amendment. In United States v. Guzman, 864 F.2d 1512, 1517 (11th Cir.1988), the Eleventh Circuit held that a traffic stop is unreasonable if it is not usual police practice to stop a motorist for that particular offense. Under that situation, the stop is a mere pretext for other reasons which cannot be justified under the Constitution. Id.
 
 
 22
 Defendants are correct that Ohio Revised Code Sec. 4513.23 does not expressly prohibit cracked windshields. The district court took judicial notice of this fact at the suppression hearing. However, the absence of a specific reference to cracked windshields does not mean that a cracked windshield may not obstruct the view of a driver in violation of section 4513.23. In any event, regardless of whether the cracked windshield was or was not a violation of section 4513.23, Officer Scharsu gave more compelling reasons at the suppression hearing to justify his investigative stop of defendants. He testified that his attention was first drawn to the Chevette because it matched the description of a vehicle involved in robberies occurring in that area. On this basis he decided to follow the Chevette. He then testified that he decided to stop the Chevette once he was informed by Officer Pritchard that Pritchard believed the owner of the car had no driving privileges.
 
 
 23
 Defendants argue that Officer Scharsu lacked reasonable suspicion based on specific and articulable facts that an offense had or was being committed concerning the driving privileges because Officer Scharsu did not know for certain that Butcher lacked driving privileges or that he was the driver of the vehicle until after he stopped the vehicle. However, the standard set forth in Terry v. Ohio does not require that the police be certain that an offense has been or was being committed. Rather, Terry requires only a reasonable suspicion. It is not unreasonable to suspect that the owner of a particular vehicle may also be the driver. In addition, it is not unreasonable for Officer Scharsu to have suspected that the owner lacked driving privileges when he was informed by a superior officer of this information. In United States v. Hensley, 469 U.S. 221, 234-35 (1985), the Supreme Court held that where a flyer issued by one police department identifying an individual as a suspect in a robbery was based on articulable facts supporting reasonable suspicion, officers from another department could lawfully stop and detain that individual based on the information received from the flyer.
 
 
 24
 Both defendants focus sharply on the fact that Officer Scharsu failed to record on his report as a justification of the stop the facts that the Chevette matched a vehicle involved in robberies in the area and that the owner had no driving privileges. However, these omissions simply bear on the credibility of the witness. The district court expressly stated that it believed Officer Scharsu was sincere and was not lying. The district court is due great deference in judging the credibility of a witness because only the trial judge can be aware of the variations in demeanor and tone of voice which have a bearing on the believability of the witness. Anderson v. City of Bessemer, 470 U.S. 564 (1985).
 
 
 25
 In sum, the district court was not clearly erroneous in finding that Officer Scharsu possessed reasonable suspicion to stop the Chevette. Reasonable suspicion for the investigative stop was based not only on the cracked windshield, but more importantly on the facts that the Chevette matched the description of a vehicle involved in robberies in the area and that the owner of the Chevette was thought to have no driving privileges. See Delaware v. Prouse, 440 U.S. 648, 663 (1979) (holding where reasonable suspicion exists to believe that motorist is unlicensed, police may lawfully stop and detain motorist for investigative purposes).
 
 
 26
 Defendants also argue that Officer Baker's sweep search of the passenger compartment of the Chevette constituted an unreasonable search and seizure under the Fourth Amendment. In Michigan v. Long, 463 U.S. 1032, 1049-50 (1983), the Supreme Court held that a police officer may make a protective search where he possesses a reasonable belief that the suspect poses a danger. The Court acknowledged that roadside encounters between police and suspects are particularly hazardous and that dangers may arise from the possible presence of weapons within easy access to a suspect. Id. In this connection, the Supreme Court stated that
 
 
 27
 these principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. See Terry, 392 U.S. at 21, 88 S.Ct. at 1880. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 27, 88 S.Ct. at 1883.
 
 
 28
 Id.
 
 
 29
 Both defendants note that Officer Scharsu testified that prior to the stop and immediately after the stop, he did not believe that either defendant posed a danger. However, because it was Officer Baker who made the protective sweep, our focus should be on Officer Baker.
 
 
 30
 Officer Baker testified that he knew Butcher from previous contact and initially did not believe he posed a danger. He also stated that initially he believed that the stop would simply result in a routine traffic citation. Thus, defendants argue that Baker did not possess the requisite reasonable suspicion that defendants were dangerous to justify his visual search of the passenger compartment. However, Officer Baker also testified that after he asked Butcher what else he was hiding besides the one can of beer and Butcher's demeanor changed from smiling to nervous, he then decided to make the visual search for more beer and to insure his and Officer Scharsu's safety. Baker also testified that at that time he was aware that the police department had received a call approximately two hours before that a brown Chevette with a smashed window had been associated with reports of gunfire and that even though he initially thought the stop was a mere traffic stop, when Butcher's demeanor changed he began to "put two and two together." J.A. at 117.
 
 
 31
 Given the facts that "roadside encounters between police and suspects are especially hazardous," see Long, 463 U.S. at 1049, that defendant Butcher's demeanor changed in response to Baker's questioning, that Officer Scharsu had told Officer Baker he believed defendants may have hidden something under the seats, and that Baker possessed information linking a brown Chevette with a smashed window to gunfire, the district court was not clearly erroneous in finding that Baker possessed a reasonable suspicion that defendants may have been dangerous and weapons may have been located in the vehicle. Therefore, under Long, Officer Baker was justified in making a visual sweep of the passenger compartment which, contrary to defendant Butcher's assertions, was within easy access of defendant Butcher.
 
 
 32
 Defendant Brady also objects to the pat down or frisk that Officer Scharsu administered while both defendants were standing behind the Chevette. Brady argues that this pat down was administered before the shotgun was found. This is incorrect. The record reveals that the pat down was given after Officer Baker discovered the shotgun. The presence of the shotgun would certainly give the officers reasonable suspicion to believe that defendants may possess other weapons on their persons and that defendants presented a danger to them. Thus, the pat down was justified. Moreover, the record does not show that any items were seized as a result of the pat down. Therefore, even if the pat down were illegal, there would be no evidence to suppress as a result of it.
 
 C.
 
 33
 Defendant Brady argues that his inculpatory statements made after the stop must be suppressed because he did not give a voluntary waiver of his Miranda rights. The state bears the burden of proof to show by a preponderance of the evidence that a defendant voluntarily waived his Miranda rights. Colorado v. Connelly, 479 U.S. 157, 168 (1986). The voluntariness of such a waiver depends entirely on whether the police engaged in coercive activity. Id. at 170. The district court stated that it did not feel there was any reason to find that defendant Brady's statements were coerced.
 
 
 34
 Defendant Brady argues that because he was not free to leave during the time in which he was sitting in the police vehicle and because he was alone with one police officer in the vehicle, he was placed in a coercive atmosphere and consequently his waiver was not voluntarily given. This argument is meritless. Miranda warnings are given after one is not free to leave. In addition, the mere fact that defendant Brady was alone in the police car with an officer does not constitute coercion on the part of the officer. The record shows that defendant Brady was lawfully seized and, by his own volition, decided to waive his Miranda rights. The record is devoid of any evidence that Officers Scharsu and Baker coerced defendant Brady in any way. Moreover, both officers testified at the suppression hearing that defendants heard and understood their Miranda rights and understood their decisions to waive those rights. The district court found this testimony to be credible, and there is no evidence whatsoever to the contrary. In sum, the district court did not err in finding that defendant Brady voluntarily waived his Miranda rights.
 
 III.
 
 35
 For the reasons stated, the judgments of the district court as to both defendants are AFFIRMED.